UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

CAM RECYCLING & MATERIALS, INC.

Debtor.

Case No. 09-25303-mdm

Chapter 7

---

MEMORANDUM DECISION ON JOE'S CRUSHING, LLC'S OBJECTIONS TO
CLAIMS OF HEIDI BRANDT (NO. 12) AND MIKE BRANDT (NO. 13)

---

The debtor, CAM Recycling & Materials, Inc., filed a chapter 11 petition on April 18, 2009, and the case was converted to chapter 7 on September 22, 2009. The debtor's majority owner and president, Heidi Brandt, filed a proof of claim for $199,854.19 and the debtor's former employee, Mike Brandt, filed a proof of claim for $152,287.61. Joe's Crushing, LLC – the landlord of certain premises formerly leased to the debtor, the lessor of certain equipment leased to the debtor, and the minority owner and major creditor of the debtor – objected to both claims.

Evidentiary hearings were held on December 7, 2009, and December 18, 2009, and the parties submitted briefs on their respective positions. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

BACKGROUND

In 2005 Heidi Brandt formed the debtor, CAM Recycling & Materials, Inc., primarily for the purpose of recycling and disposing of concrete and asphalt. In January 2007, Joseph Tate formed Joe's Crushing, LLC, as an angel investor to the debtor and in turn was given a 40%

interest in CAM. As part of its investment, Joe's Crushing purchased equipment and real estate at auction from the secured lender of Heidi Brandt's defunct business, HMB Contractors, Inc., and a crusher from a third party, for a total of $2,000,000. Joe's Crushing then leased the equipment and real estate to the debtor, as well as provided a line of credit to the debtor. The debtor was able to make only a few payments on the real estate lease and none on the equipment leases.

From 2007 until the filing of the bankruptcy, Heidi Brandt worked between 40 and 60 hours per week for CAM Recycling. She performed administrative duties for CAM and managed the debtor's payroll, employees, bidding, contracts, and projects. Mike Brandt, Heidi's spouse, solicited business and provided supervisory services for CAM Recycling.

Heidi Brandt's claim is described in the attachment to the proof of claim as follows:

1. Salary – Heidi Brandt's salary claim is based on her course of dealing with her partner, Joseph Tate, as memorialized in a spreadsheet prepared by Ed Scaro (upon information and belief prepared at the direction of Joseph Tate). In that spreadsheet, it is indicated that Heidi Brandt is assumed to have a $75,000 salary. The claim is based upon the uncollected salary from May 2007 (the reference in the spreadsheet) to September 21, 2009 (the date of the conversion hearing). The total salary claim is $179,250.

2. Money loaned to CAM: As indicated in the Chapter 11 petition, Heidi Brandt loaned CAM $604.19. Documentation for this is in possession of CAM, and Ms. Brandt has been unable to access it as of the time of this filing.

3. Property Loaned to CAM: Heidi and Mike Brandt loaned property to CAM during its operation [list attached, plus two servers and battery backup] and whose total value is estimated at $20,000. Note: because the Brandts have been married since 1997 for purposes of this claim and for simplicity they are considering it all marital property (even though[] there are some exceptions – to the extent the court wants the claim separated, the Brandts are willing to attempt to do so; in other words, there is overlap between the two claims, which is why the appropriate box is checked on the Proof of Claim form.

(Amended Proof of Claim No. 12, p. 3).

Similarly, Mike Brandt's claim is described in the attachment to the proof of claim as follows:

> 1. Salary – Mike Brandt's salary is based on his course of dealings with Heidi Brandt and her partner, Joseph Tate, as memorialized in a spreadsheet prepared by Ed Scaro (upon information and belief prepared at the direction of Joseph Tate). In that spreadsheet, it is indicated that Mike Brandt is assumed to have a $55,000 salary. The claim is based upon the uncollected salary from May 2007 (the reference in the spreadsheet) to September 21, 2009 (the date of the conversion hearing). The total salary claim is $131,450.
>
> 2. Money loaned to CAM: As indicated in the Chapter 11 petition, [Mike] Brandt loaned CAM $837.61. Documentation for this is in possession of CAM, and [Mr.] Brandt has been unable to access it as of the time of this filing.
>
> 3. Property Loaned to CAM: Heidi and Mike Brandt loaned property to CAM during its operation [list attached, plus two servers and battery backup] and whose total value is estimated at $20,000. Note: because the Brandts have been married since 1997 for purposes of this claim and for simplicity they are considering it all marital property (even though[] there are some exceptions – to the extent the court wants the claim separated, the Brandts are willing to attempt to do so; in other words, there is overlap between the two claims, which is why the appropriate box is checked on the Proof of Claim form.

(Amended Proof of Claim No. 13, p. 3).

On August 13, 2007, Heidi Brandt, Mike Brandt and Joe Tate all signed a written Memorandum of Understanding regarding the development of a new venture. The agreement provided, in relevant part:

> The purpose of this memorandum is to summarize the primary concepts of how the new demolition company (DEMOCO, official name to be determined [subsequently named Cream City Wrecking & Dismantling, LLC]) will work between the parties. Important issues for all participants needs to be outlined in this memorandum.
>
> 1. Joe Tate will invest up to $650,000 towards the development of a new company, DEMOCO, which will focus on demolition work. This investment will consist of a maximum of $550,000 towards equipment and $100,000 for a line of credit.
>
> 2. DEMOCO will be managed by Joe Tate, Mike Brandt and Ed Scaro.
>
> 3. DEMOCO will be a separate entity owned through Joe Tate. This company will

3

        purchase the equipment necessary for DEMOCO to operate per the equipment list developed jointly by Heidi, Mike, Ed and Joe. After 2 years of successful operation – DEMOCO may wish to own – Price x .08 for 5 years.

4. DEMOCO will utilize LCD and CAM as much as possible in bidding all work projects. ...

6. Heidi Brandt will continue to facilitate the development of CAM. Get $1,000.00 per month to CAM for Heidi.

7. Mike Brandt will be the primary manager of DEMOCO and CAM. Mike will coordinate, manage and market all projects for DEMOCO. Mike will meet on a weekly basis (at a minimum) with Ed Scaro to coordinate development of DEMOCO and CAM. Weekly meetings regarding CAM will include Roger (who will be the on-site manager for CAM) and Heidi (owner).

8. Mike and Heidi Brandt will be paid $80,000 per year (on a combined basis, exact breakout for each to be determined) ($68,000 Mike DEMOCO, $12,000 Heidi CAM). This compensation is for Mike's day to day management of CAM and DEMOCO and Heidi's needed consulting time for each entity. Mike will be eligible for a possible year end bonus based on DEMOCO meeting the projections developed by Heidi. If the projection of $148,500 in net income is achieved, Mike will receive a $20,000 year end bonus. Compensation will be reviewed annually, starting December 31, 2007. ...

(Exh. JC10, Memorandum of Understanding, August 13, 2007).

As is set forth above, it was initially agreed by the Brandts and Joe Tate that Cream City Wrecking would pay the Brandts annual compensation of $80,000, with $68,000 paid to Mike and $12,000 paid to Heidi. (Exh. JC10, ¶ 8). Subsequently, the parties agreed that Cream City would pay the entire $80,000 in compensation to Mike. Heidi Brandt, Mike Brandt, Joe Tate and Ed Scaro, a special project manager for various companies related to Joe Tate, later met to discuss modifications to the Brandts' compensation. At or around that time, Heidi suggested her salary should be $75,000 per year and Mike's should be $55,000 per year, and those figures were noted by Mr. Tate in the debtor's adjusted profit and loss summary for May 2007. (Exh. JC8).

4

Case 09-25303-mdm   Doc 131   Filed 04/06/10   Page 4 of 11

Ms. Brandt never actually received any compensation from CAM Recycling. According to Ms. Brandt, the Memorandum of Understanding was not a final agreement between the parties regarding the compensation of Mike and herself. On the other hand, Mr. Tate thought the issue regarding the Brandts' compensation had been fully and finally resolved by the written Memorandum of Understanding (Exh. JC10). Messrs. Tate and Scaro both testified that Cream City paid the Brandts on the debtor's behalf for the Brandts' services to the debtor because the debtor did not have any resources to do so. Mr. Brandt's pay statements from Cream City disclose that he received salary based on $80,000 per year up until the time his employment was terminated.

According to Mr. Tate, after the Brandts' personal guarantees to Mr. Tate and/or entities owned by him were discharged in the Brandts' individual bankruptcy in 2008, the parties' attempts to negotiate a different agreement were unsuccessful. Mr. Brandt's employment with Cream City was terminated shortly thereafter.

ARGUMENT

The Brandts argue Mike is entitled to receive annual compensation of $55,000 for services rendered as an employee of the debtor, and Heidi is entitled to annual compensation of $75,000, as an officer and employee of the debtor, under the doctrine of quantum meruit. *See Linquest Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469 (7th Cir. 2009). As a corporate officer, Heidi obtained employee status by performing day to day functions of the business. *See Continental Cas. Co. v. Industrial Comm'n*, 26 Wis. 2d 470, 132 N.W.2d 584 (1965). According to the Brandts, the written Memorandum of Understanding was an agreement between Joe Tate and the Brandts regarding services performed on behalf of Cream City Wrecking, not CAM

5

Recycling.

Joe's Crushing, LLC, argues the Brandts' quantum meruit claims should be denied because they provided insufficient evidence of the damages, they have not presented evidence that their services to the debtor were at the debtor's request, and they failed to establish that they reasonably expected the debtor to pay them for their services. Additionally, damages under quantum meruit are measured by the reasonable value of the claimant's services, which are calculated at the customary rate of pay for such work in the community, *Lindquist*, 557 F.3d at 477, and the record is devoid of such evidence.

Joe's Crushing also disputes the Brandts' claim to approximately $20,000 worth of office equipment, noting the Brandts did not claim they owned any such assets in their personal bankruptcy schedules filed in 2008. The Brandts counter this position by asserting the equipment reverted to them after Lincoln State Bank abandoned the property from the estate of HMB Contractors, Inc., a defunct company owned by Heidi Brandt. At a previous hearing in this case, counsel for Harris Bank, the successor to Lincoln State Bank, stated it was uncertain as to what office equipment belonged to the bank and what, if any, had been abandoned.

## DISCUSSION

Under 11 U.S.C. § 502(a), a creditor's proof of claim is deemed allowed unless a party in interest objects. When there is an objection by an interested party, the court shall, after notice and a hearing, determine the proper amount of the claim as of the date of the petition, and shall allow such claim unless such claim fits into one of the categories forbidden by 11 U.S.C. § 502(b). Under 11 U.S.C. § 502(b)(1), the claim should not be allowed if it would not be enforceable under applicable law. Under Bankruptcy Rule 3001(f), a proof of claim filed in

6

appropriate form with appropriate documentation shall constitute prima facie evidence of its validity. An objection to claim must then provide some evidence to defeat the presumption of validity. *In re Airadigm Commc'ns, Inc.*, 376 B.R. 903, 916 (Bankr. W.D. Wis. 2007).

This Court is not lacking in sympathy for the plight of Mr. and Mrs. Brandt. They obviously did render services to the debtor. They, however, have fallen into a trap, partially of their own making. If there is ever a time for an officer, such as Heidi Brandt, to see to the preparation of proper documentation, it is when the officer is seeking compensation. Written contracts with a clear understanding of the nature of the services to be performed and the compensation to be paid for such services are essential, if not absolutely required, especially when no one knows how soon a new company will be able to pay its owner/employees.

Clearly there was no express contract between the debtor and the Brandts. Where a party provides services to another party under an otherwise unenforceable contract, the party may nevertheless recover the value of the services upon quantum meruit. *Mead v. Ringling*, 266 Wis. 523, 528, 64 N.W.2d 222 (1954). The doctrine of quantum meruit is also known as implied-in-fact contract in Wisconsin. *See W.H. Fuller Co. v. Seater*, 226 Wis.2d 381, 386 n. 2, 595 N.W.2d 96 (Ct. App. 1999). As to the claim for recovery in quantum meruit, this is an equitable doctrine. *Baierl v. McTaggart*, 2001 WI 107, ¶ 42 n. 1, 245 Wis.2d 632, 629 N.W.2d 277 (Crooks, J., concurring) (citing Black's Law Dictionary 1255 (7th ed. 1999)). The decision to grant equitable relief is a discretionary decision of the trial court. *Zinda v. Krause*, 191 Wis.2d 154, 175, 528 N.W.2d 55 (Ct. App. 1995).

Quantum meruit is a quasi-contract theory that compensates a plaintiff where a defendant receives services from the plaintiff without providing compensation for those services when it

7

would be unfair not to do so. "'The general rule is that if a person performs valuable services for another at that other's request, the law implies, as matter of fact, the making of a promise by the latter and acceptance thereof by the former to pay the one performing the service the reasonable value thereof.'" *Theuerkauf v. Sutton*, 102 Wis.2d 176, 184, 306 N.W.2d 651 (1981) (quoting *Wojahn v. National Union Bank*, 144 Wis. 646, 667, 129 N.W. 1068 (1911)). Under Wisconsin law, quantum meruit requires that "(1) the defendant requested the plaintiff to perform services, (2) the plaintiff complied with the request, and (3) the services were valuable to the defendant." *Theuerkauf*, 102 Wis.2d at 185, 306 N.W.2d at 658; *W.H. Fuller Co.*, 226 Wis.2d at 386 n. 2, 595 N.W.2d at 99. In essence, the law implies a contract by the parties' conduct where one is not explicit. As explained by the supreme court:

> The ultimate and dispositive inquiry is that an implied in fact contract is not conclusively proved unless it is shown that the parties, by their words, their conduct, or course of dealing, came to a mutual agreement and this determination in turn depends upon an objective assessment of the parties' external expressions of intention as distinguished from their undisclosed intentions.

*Theuerkauf*, 102 Wis. 2d at 186, 306 N.W.2d at 658 (citation omitted).

In a situation such as this, it could be assumed that the debtor, by its president, Heidi Brandt, requested that the individual, Heidi Brandt, perform services for the corporation. Obviously, a human being will agree with himself or herself, and Heidi's conduct was consistent with such agreement. The same might be said of Michael Brandt, as he provided some services to the debtor. The debtor requested their services, and they complied. So far, so good.

Unfortunately, there is no indication that there was any agreement as to compensation for either of them to be paid by this debtor. The Brandts' personal bankruptcy schedules filed in June 2008 indicate they have no accounts receivable or other liquidated debts owed to them. So,

8

it appears that at the time of their personal bankruptcy, the Brandts had no expectation of being paid any additional amounts for their services to the debtor. This is not particularly surprising given that Cream City was paying them a total of $80,000 per year by way of Mike's salary. While the Memorandum of Understanding dated August 13, 2007, signed by both the Brandt's and Joe Tate (Exh. JC10), may not constitute a complete meeting of the minds with respect to both businesses, it shows that the Brandts acknowledge they were together providing services to CAM and to the entity that was to become Cream City for the total salary. This document, which they could have easily changed if the salary was only to relate to Cream City, shows that the Brandts were expecting nothing from the debtor early in its existence. The Brandts' argument that the $80,000 related only to Cream City, or that there was any intention on the part of anyone that payment would come from the debtor, must fail.

The fact that the claimants in this case are the majority owner and her husband relates not only to expectations but to fairness. Many entrepreneurs who start up businesses have to forgo paychecks in the beginning. This is not true of employees who have no ownership interest and who cannot be expected to assume the risk of fluctuating availability of funds when a business starts up. The law might imply a contract for payment in the latter case, but not necessarily in the former, when the owner/employee is providing services not only for the current operation but for the future as well. The Brandts were receiving an income from their major investor's other enterprises, so they were in fact being paid for current services while they were trying to make a go of the new company. It is not unfair to hold that they are not entitled to quantum meruit in addition to their current earnings.

If quantum meruit were to apply, "The measure of damages for one seeking the

9

reasonable value of services in quantum meruit is defined in terms of the 'rate of pay for such work in the community at the time the work was performed.'" *Barnes v. Lozoff*, 20 Wis.2d 644, 652, 123 N.W.2d 543 (1963) (citing *Mead*, 266 Wis. at 529); *see also Lindquist*, 557 F.3d at 483. The May 2007 P&L summary for CAM prepared by Ed Scaro (Exh. JC8) proposes $75,000 for Heidi and $55,000 annually for Mike, but the report itself lists these as "assumed values." These were figures put in at the suggestion of Heidi Brandt, but there is no evidence of their accuracy, an industry standard, or the debtor's ability to pay. Since neither the debtor nor the Brandts expected the debtor would pay for the Brandts' services, and we have no adequate proof of what those services were worth, the Court cannot use these figures to show the Brandts' entitlement to compensation from the debtor.

Both parties' discussed an alternative theory of recovery in their briefs: that the Brandts would have been entitled to a salary that the debtor had no ability to pay if they could show that the debtor would have been solvent and avoided bankruptcy but for allegedly unpaid receivables owed to the debtor by one or more of the companies owned by Joe Tate. The Brandts asked that evidence be reopened to pursue this line of inquiry. Further pursuit of this allegation would not be useful. According to the debtor's schedules, Joe's Crushing owed it $410,992.51 for equipment repairs. Although it is not in the schedules, Cream City's sublease should have paid the debtor $70,000 over 20 months. It is undisputed that the debtor did not pay rent of $810,000 while it was in business, which is far more than it was allegedly owed by Joe's Crushing. This matter was discussed in court, and the gist of the colloquy is quoted at page five of the respondent's post-trial brief. Even if the debtor had received payment for repairs and the sublease, there would have been no money for the Brandts. This issue has nothing to do with the

10

Brandts' quantum meruit theory of an implied contract for services rendered. The Brandts cannot prevail on this allegation.

The Brandts claim they are also owed for $20,000 (total) worth of equipment, but there was no evidence presented as to whether they actually owned it or had any expectation of payment by the debtor. This portion of the two claims is disallowed. On the other hand, they made small loans, $604.19 by Heidi and $837.61 by Mike, and these are not disputed. These will be allowed. A separate order sustaining the objections to the claims will be entered.

April 6, 2010

                                              Margaret Dee McGarity
                                              Chief Judge, U.S. Bankruptcy Court